IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ABC-NACO, Inc., *ex rel.* ABC-NACO, INC., </br></br>Plaintiff-Appellant, </br></br>v. </br></br>BANK OF AMERICA N.A., </br></br>Defendant-Appellee. | No. 05-C-6600 </br></br>HON. JUDGE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff-Appellant the Official Committee of Unsecured Creditors of ABC-NACO, Inc. (the "Committee" or "Appellant"), on behalf of ABC-NACO, Inc. ("ABC-NACO" or "Debtor"), on appeal from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). Appellant now challenges the ruling of the Bankruptcy Court that retroactive application of Section 1213 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") does not violate either the Due Process Clause or the Takings Clause of the Fifth Amendment. Appellant Br. at 1. This pure legal issue is the only issue on appeal to this Court.

I.  BACKGROUND

The relevant facts in this case are simple and not in dispute. They are set forth in the Bankruptcy Court's opinion, *Official Comm. of Unsecured Creditors of ABC-NACO, Inc. v. Bank of America N.A. (In re ABC-NACO, Inc.)*, 331 B.R. 773, 776 (Bankr. N.D. Ill. 2005). ABC-NACO was a supplier of products to the rail industry. Before October 30, 2000, ABC-NACO entered into a revolving loan agreement with Defendant-Appellee Bank of America N.A.

–1–

and several other lenders (collectively, the "Bank" or "Appellee").  The Bank received corporate guarantees from ABC-NACO's subsidiaries.  The subsidiary guarantors were "insiders" of ABC-NACO within the meaning of 11 U.S.C. § 101(31).  The Bank was not an insider of ABC-NACO.  In late 2000 and early 2001, the Debtor and Bank amended the Credit Agreement to give to the Bank liens on several pieces of real property (the "Contested Liens").  These Contested Liens were all granted between ninety days and one year prior to the Debtor filing for bankruptcy. The Debtor filed a Chapter 11 petition in the Bankruptcy Court on October 18, 2001.

On February 28, 2002, the Committee initiated this adversary proceeding in the Bankruptcy Court, seeking to avoid the Contested Liens as preferences under 11 U.S.C. § 547(b).  Section 547 of the Bankruptcy Code authorizes a trustee to avoid a preferential payment made to a creditor by a debtor within 90 days of filing, whether the creditor is an insider or an outsider.  11 U.S.C. § 547.  Section 547(b) provides an extended preference period of one year for a transfer made "to or for the benefit of a creditor" if "such creditor at the time of such transfer was an insider."  11 U.S.C. § 547(b)(4)(B).  Congress created this extended preference provision "[t]o address the concern that a corporate insider (such as an officer or director who is a creditor of his or her own corporation) has an unfair advantage over outside creditors." H.R.Rep. No. 109-31, at 143 (2005).  Presumably, the insider creditor has access to more information about the debtor's solvency than the non-insider creditor, so § 547(b)(4)(B) incentivizes non-insider loans and reduces their risk during the debtor's bankruptcy by permitting payments to insider creditors to be avoided as preferences for a longer period of time than payments to non-insiders.

In *Levit v. Ingersoll Rand Fin. Corp. (In re DePrizio)*, 874 F.2d 1186 (7th Cir. 1989) (hereinafter "*DePrizio*"), the Seventh Circuit construed § 547(b) to allow avoidance of a loan

–2–

payment made within the extended preference period even though the payment was made to a *non-insider* lender, because an insider had guaranteed the loan.  In essence, *DePrizio* applied the extended preference period to payments to non-insiders where an insider had merely *benefitted* from the payment.  Relying on *DePrizio*, the Committee argued in Bankruptcy Court that the Contested Liens were transfers of a debtor's property to a non-insider between 90 days and one year prior to bankruptcy that could be avoided under § 547(b)(4)(B) because the transfers benefitted an insider of the debtor (ABC-NACO's subsidiaries).

However, after trial concluded and while judgment was pending, Congress passed and the President signed BAPCPA on April 20, 2005.  Section 1213 of BAPCPA added a new subsection to 11 U.S.C. § 547 that specifically limited preference claims against non-insiders (like the Bank) to transfers that occurred within 90 days of the bankruptcy filing:

> If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

11 U.S.C.A. § 547 (i).  It is undisputed that § 1213 changes the bankruptcy code to prohibit the lien avoidance with respect to non-insiders that § 547 previously permitted, voiding the Committee's only basis for its adversary proceeding.  Section 1213 also expressly provided that its amendments "shall apply to any case that is pending or commenced on or after the date of enactment of this Act,"  Pub. L. No. 109-8, 119 Stat. 23, 194, which made it applicable to the Committee's pending proceeding.

The day after BAPCPA was signed, the Bank moved for judgment as a matter of law under § 1213, arguing for retroactive application of the statute.  The Committee contended that retroactive application would violate the Due Process and Takings Clauses of the Fifth Amendment.  The United States also filed an intervenor's brief at the request of the Bankruptcy

–3–

Court. On October 13, 2005, the Bankruptcy Court granted the Bank's motion for judgment as a matter of law.

## II. STANDARD

On appeal to a district court, a bankruptcy court's conclusions of law are reviewed de novo. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). The only questions on appeal are pure questions of law regarding whether § 1213 violates the Due Process and/or Takings Clauses of the Fifth Amendment.

## III. ANALYSIS

### A. Violation of Due Process

The Committee argues that retroactive application of § 1213 would constitute a denial of its substantive due process rights under the Fifth Amendment, which provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."

#### i. Due Process Standard

Courts recognize that Congress cannot always legislate retroactively what it can legislate prospectively, and "the retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976). The retrospective application of a statute must, independent of the purpose behind prospective legislation, satisfy due process. However, the retroactive aspects of legislation are not subject to heightened scrutiny; both the retroactive and the prospective aspects are subject to the same test of due process. *Davon, Inc. v. Shalala*, 75 F.3d 1114, 1123 (7th Cir. 1996).

To prevail on a due process claim, "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery*, 428

U.S. at 15; *Deck v. Peter Romein's Sons, Inc.*, 109 F.3d 383, 387-88 (7th Cir. 1997). The burden is met by a showing that the retroactivity is not "rationally related to a legitimate legislative purpose." *Pension Benefit Guaranty Corp v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). "[L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality." *Usery*, 428 U.S. at 15. The strong deference accorded legislation in the field of national economic policy is applied both to prospective and retroactive legislation. *Pension Benefit*, 467 U.S. at 729. The legitimacy of the legislative purpose is judged on a plausibility standard. *Listle v. Milwaukee County*, 138 F.3d 1155, 1160 (7th Cir. 1998). Congress does not need to articulate the legitimate purpose, nor must the legitimate purpose actually motivate Congress when passing the legislation. "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993); *Baker v. GTE North Inc.*, 110 F.3d 28, 30 (7th Cir. 1997).

### ii. Application to § 1213

The legislative history of § 1213 provides a rationale for the statute's general purpose. It first discusses what Congress called "the *DePrizio* problem," or courts interpreting § 547(b) to apply the extended preference period to transfers to non-insider creditors if an insider had benefitted from the transfer in some way. H.R. Rep. No. 109-31 at 143-44. Congress noted that *DePrizio* and cases similar to it "had the effect of discouraging lenders from obtaining loan guarantees, lest transfers to the lender be vulnerable to recapture by reason of the debtor's insider relationship with the loan guarantor." *Id.* at 144. Congress then went on to discuss its previous efforts to tackle the *DePrizio* problem:

> Section 202 of the Bankruptcy Reform Act of 1994 addressed the *DePrizio* problem by inserting a new section 550(c) into the Bankruptcy Code to prevent avoidance or recovery from a noninsider creditor during the 90-day to one-year period even though the transfer to the noninsider benefitted an insider creditor.

*Id.* Congress noted that the 1994 Amendments, with its addition of 11 U.S.C. § 550(c) to the Bankruptcy Code, had failed to correct the *DePrizio* problem because it had "failed to make a corresponding amendment to section 547." *Id.* As a result, "a trustee could still utilize section 547 to avoid a preferential lien given to a noninsider bank, more than 90 days but less than one year before bankruptcy, if the transfer benefitted an insider guarantor of the debtor's debt." *Id.* Section 1213 was enacted to correct the remaining *DePrizio* problem:

> Accordingly, section 1213 of the Act makes a perfecting amendment to section 547 to provide that if the trustee avoids a transfer given by the debtor to a noninsider for the benefit of an insider creditor between 90 days and one year before filing, that avoidance is valid only with respect to the insider creditor.

*Id.* The House Report ended with an explicit statement that § 1213 was to apply "to any case, including any adversary proceeding, that is pending or commenced on or after the date of enactment of this Act." *Id.*

The most explicit rationale offered in the House Report—to encourage lending by non-insiders—supports prospective legislation but not retroactive application, since loans already made cannot be incentivized. Therefore, the Bankruptcy Court found two additional rationales sufficient to satisfy the rationality test for due process: the retroactivity of § 1213 was justified (1) as a clarification of § 547, which was "misconstrued by *DePrizio*, . . . [which] the 1994 amendments inadvertently failed to overturn"; and (2) as "a matter of fairness . . . [because] retroactive application rationally promotes the purpose of preventing an inappropriate transfer of property from the lender to other creditors of the debtor's estate." *Official Comm. of Unsecured Creditors*, 331 B.R. at 783.

Either one of these rationales suffices to satisfy the low standard of rational basis review. The Supreme Court has held that correcting legislative errors is a "benign and legitimate" rationale for retroactive application of a statute. *Landgraf v. USI Film Prods.*, 551 U.S. 244, 267-68, 114 S.Ct. 1483 (1994) ("Curative legislation . . . which is designed to cure what Congress perceived as a defect in prior law, is entitled to particular deference."). As the House Report on BAPCPA states, Congress passed § 1213 as a "perfecting amendment" to address the "*DePrizio* problem." H.R. Rep. No. 109-31 at 144. The legislative history to the 1994 amendments clearly states that Congress intended to overrule *DePrizio* in its entirety:

> Several recent court decisions [citing *Deprizio*, inter alia] have allowed trustees to recapture payments made to non-insider creditors a full year prior to the bankruptcy filing, if an insider benefits from the transfer in some way. Although the creditor is not an insider in these cases, the courts have reasoned that because the repayment benefitted a corporate insider (namely the officer who signed the guarantee) the non-insider transferee should be liable for returning the transfer to the bankrupt estate as if it were an insider as well. **This section overrules the *DePrizio* line of cases and clarifies that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90-day statutory period.**

H.R. Rep. 103-835 at 45 (1994) (emphasis added). It is enough of a reason that the 2005 Congress perceived the 1994 amendments to be an imperfect correction of the *DePrizio* problem, and that it passed § 1213 and applied its provisions retrospectively to pending cases to preclude the application of the extended preference period to situations it was never meant to be applied to.

Appellant argues that retroactive application of § 1213 would be unfair because it upsets the expectations that ABC-NACO and the Bank both had when it entered into the loan agreement—that both parties anticipated, based on Seventh Circuit law, that the extended preference period applied to payments to non-insider creditors whose loans were guaranteed by insider guarantors, and bargained for the terms of the loan accordingly. There are several flaws

–7–

with this argument. First, as the legislative history of the 1994 amendments above shows, the parties were on notice that Congress *intended* to overrule *DePrizio*, even if its attempt to do so was defective, and that it was by no means certain that the extended preference period would apply to payments from ABC-NACO to the Bank. Second, courts have widely recognized that the terms of a bargained-for contract do not define the limits of Congress' power under the due process clause. *Davon*, 75 F.3d at 1125 ("Plaintiffs' contractual obligations under the [contracts] they signed in no way define the outer limit of Congress's power to legislate consistently with the Due Process Clause."). Furthermore, "our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Usery*, 428 U.S. at 16–17. Even if the Court accepts Appellant's argument that upsetting the parties' expectations is unfair, mere unfairness is not irrational, and it does not cause a law to fail under rational basis review.

### B. Violation of the Takings Clause

The Committee also contends that retroactive application of § 1213 violates the Takings Clause of the Fifth Amendment. The Fifth Amendment provides that "private property [shall not] be taken . . . without just compensation." To prove an unconstitutional taking, the challenger must demonstrate that he was deprived of a vested property right without just compensation. *Landgraf*, 511 U.S. 244 at 267.

The Bankruptcy Court held that "the Committee's Takings Clause arguments fail because the Committee cannot show that retroactive application of § 1213 affects any vested property right of ABC-NACO." *Official Comm. of Unsecured Creditors*, 331 B.R. at 779. Its reasoning went as follows: the only "property right" the Committee claims to have been taken by the retroactive application of § 1213 is its cause of action for preference avoidance for payments

–8–

made between 90 days and one year before bankruptcy to non-insiders on loans guaranteed by insider. A property interest in a cause of action does not vest, for purposes of the Takings Clause, until judgment is entered. *McCullough v. Virginia*, 172 U.S. 102, 123-24, 19 S.Ct. 134 (1898) ("It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases."); *Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1345 (7th Cir. 1992) ("A judgment that has become final through exhaustion of all appellate remedies is a property right."); *Mirabel v. General Motors Acceptance Corp.*, 537 F.2d 871, 876 (7th Cir. 1976) (rights created by Congress can be amended or modified as Congress sees fit, as "what Congress giveth, Congress can taketh away"), *overruled on other grounds by Brown v. Marquette Sav. & Loans Ass'n*, 686 F.2d 608, 614 (7th Cir. 1982). Causes of action under the Bankruptcy Code, such as the preference avoidance provisions of § 547, therefore do not vest until final judgment. *Miller v. Grace Fellowships Inc. (In re Witt)*, 231 B.R. 92, 99 (Bankr. N.D. Okla. 1999) (amendment to Bankruptcy Code restricting avoidance powers was not an unconstitutional taking). Debtors seeking to avoid payments are not considered to hold vested property interests in the payments until after judgment is entered in their favor. *In re McDonald Bros. Const., Inc.*, 114 B.R. 989, 997 (Bankr. N.D. Ill. 1990) ("It is the recovery of the funds involved in an 'avoided' transfer, not the potential for recovery, that causes the funds to be considered part of the estate."); *Klingman v. Levinson*, 158 B.R. 109, 112 (Bankr. N.D. Ill. 1993) ("Fraudulently conveyed asset does not become property of the estate[1] until it is recovered by the trustee."). Therefore, the Bankruptcy

---

[1] Section 541(a)(3) of the Bankruptcy Code defines "property of the estate" as "any interest in

–9–

Court concluded, "[A] bankruptcy estate does not possess a property interest in transferred property, even though the transfer is subject to avoidance, until the estate obtains a judgment actually avoiding the transfer. Until that time, the estate holds only an unvested cause of action." *Official Comm. of Unsecured Creditors*, 331 B.R. at 781.[2]

The Committee argues on appeal that its avoidance interest is a vested property right because (1) causes of action relating to an interest in *real property* are vested property rights, in a way that causes of action relating to money are not, and (2) case law reveals that rights to property which "can be exercised only through a legal proceeding" are still vested within the meaning of the Takings Clause. Appellant Br. at 13. However, the few Takings Clause cases that the Committee cites for these propositions are all fundamentally different from the situation at hand. In *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935), a bank acquired a mortgage, which under state law constituted a lien enforceable only by suit to foreclose. *See Armstrong v. United States*, 364 U.S. 40, 44 (1960) (summarizing *Radford*). Subsequently, Congress amended the Bankruptcy Act so as to deprive mortgagees of substantial incidents of their rights to resort to mortgaged property; bankrupt mortgagors were essentially permitted to place a five-year stay on bankruptcy proceedings and then pay an appraised price to retain possession of the property. The Supreme Court held that this change in the Bankruptcy Code took the bank's vested property rights without just compensation in violation of the Fifth Amendment. The change in the Bankruptcy Code unconstitutionally altered the *scope* of the mortgagee's rights by taking away its preexisting rights under Kentucky law to enforce the mortgage and sell the property; the *fact* that the mortgagee had rights in the specific property was

---

property that the trustee recovers." 11 U.S.C. § 451(a)(3).
2 The court then dispatched with the Committee's argument that one of its contractual rights arising under Illinois mortgage law had been taken without just compensation, which the Committee does not raise on appeal.

–10–

not in dispute. *Radford*, 295 U.S. at 589-93. In contrast, the essence of the current dispute is whether ABC-NACO retains *any* right in the specific property, not the scope of its rights in the property. ABC-NACO filed its adversary action in bankruptcy court for the mere opportunity to recapture property that had already been transferred to the Bank as part of the loan agreement. Thus, unlike the bank in *Radford*, the Committee's property interest in the disputed liens cannot be said to have vested before a final judgment on the avoidance determination. The other case cited by the Committee for its argument is similar: it involves a winning litigant who was undisputedly the lienholder in the specific property; the lien was a vested property interest; subsequent government actions deprived the lienholder of its rights in the disposition of the mortgaged property, constituting a taking under the Fifth Amendment. *See Armstrong*, 364 U.S. at 44-45 (under Maine law, materials supplier became entitled to lien on boat hulls when it furnished the supplies, so supplier had vested property right to materials within meaning of Takings Clause). In its reading of these cases, the Committee has conflated other plaintiffs' vested property rights with its own uncertain pursuit of a potential property interest. Furthermore, neither of these cases, and none that the Committee cites, support the Committee's first contention, that causes of action relating to specific real property are vested property rights simply by the nature of the type of property involved.

*McCullough* and the bankruptcy avoidance cases cited in the Bankruptcy Court's decision have established that avoidance claims are causes of action that do not vest as property interests until judgment occurs. Since a vested property interest is not involved, the retroactive application of § 1213 is not an unconstitutional taking.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is AFFIRMED.

Enter:

> /s/ David H. Coar
> David H. Coar
> United States District Judge

Dated: February 27, 2009